(162 App. Div. 349)

### KEHRES v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.　May 15, 1914.)

1. MUNICIPAL CORPORATIONS (§ 385*)—PUBLIC IMPROVEMENTS—UNLAWFUL CHANGE OF STREET GRADE—LIABILITY TO ABUTTING OWNER.

Where a street grade was changed without lawful authority, the city is liable to an abutting owner whose property had been improved with relation to the former legally established grade.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.*]

2. BOUNDARIES (§ 20*)—DESCRIPTION—PUBLIC STREET.

A deed, which describes the land conveyed as beginning at a point formed by the intersection of the southerly line of M. street with the westerly line of S. street, running thence westerly along the southerly line of M. street, etc., conveys no interest in the bed of the street.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 123–130, 132; Dec. Dig. § 20.*]

3. LIMITATION OF ACTIONS (§ 32*)—ACCRUAL OF RIGHT OF ACTION—CHANGE IN STREET GRADE.

An unlawful change in the grade of a street is not a taking of the property of an adjoining owner or a continuing nuisance; and a right of action to recover for damages thereby occasioned to abutting property, the measure of which damage is the difference in value before and after the change, accrues at the time of the completion of the change, and is

barred within six years after such time by the statute of limitations of actions for injuries to property. Code Civ. Proc. §§ 381, 382.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 143–145; Dec. Dig. § 32.*]

Appeal from Trial Term, Kings County.

Action by Edward Kehres, as administrator of Elizabeth Kehres, deceased, against the city of New York. Judgment for the plaintiff, and defendant appeals. Reversed, and plaintiff's complaint dismissed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Charles J. Nehrbas, of New York City, for appellant.
Royal E. T. Riggs, of New York City, for respondent.

BURR, J. [1] In 1905, the city changed the grade of Meserole avenue in the borough of Brooklyn, and the work was completed on September 30th in that year. This grade was changed without lawful authority, and defendant is liable for damages resulting therefrom to an abutting owner whose property had been improved with relation to a former legally established grade. Friel v. City of New York, 150 App. Div. 317, 134 N. Y. Supp. 1025, affirmed on opinion below 208 N. Y. 555, 101 N. E. 1103.

[2] Plaintiff's intestate was the owner of certain premises situated on the southwest corner of Meserole avenue and Diamond street. It does not appear that she was the owner of any of the land in the bed of the street. The description in the deed, considered by itself, would exclude the land in the street. It begins at a point formed—

"by the intersection of the *southerly* line of Meserole street (now called Meserole avenue) and the westerly line of * * * Diamond street * * * thence running *westerly along the southerly line* of said Meserole avenue," etc. See White's Bank of Buffalo v. Nichols, 64 N. Y. 65; Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33; Trowbridge v. Ehrich, 191 N. Y. 361, 84 N. E. 297; Fulton L., H. & P. Co. v. State of N. Y., 200 N. Y. 400, on page 417, 94 N. E. 199, 37 L. R. A. (N. S.) 307.

In Van Winkle v. Van Winkle, supra, 184 N. Y., on page 203, 77 N. E., on page 35, the court say:

"The general rule, both in England and in this state, is that the fee of the soil of the highway is presumed to belong to the adjoining owners, * * * but that such presumption can be rebutted by an express provision in the deed to the effect that the fee to the highway was not intended to be conveyed, * * * as where the description of the premises * * * commences *at a point upon one side thereof and thence runs along the side to* a point specified."

In Trowbridge v. Ehrich, supra, 191 N. Y., on page 366, 84 N. E., on page 297, it was conceded that such a description would exclude the street but for the fact that grantor by a *subsequent* clause in the deed conveyed all the land "lying in front of and adjacent to said lots, to the center of said avenue and place." In Fulton L., H. & P. Co. v. State, supra, the court points out the distinction between descriptions which run along the bank of a stream, or along the side of a street, and those which run to the stream or street, and thence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*along* the *stream or street.* There is nothing in this case to qualify these words of description. Plaintiff's rights, therefore, are those of an abutting owner only.

[3] This action, which is an action at law, was commenced November 1, 1911. The sole defense is the statute of limitations.

"The following actions must be commenced within the following periods, after the cause of action has accrued. * * * Within six years: An action to recover damages for an injury to property * * * except in a case where a different period is expressly prescribed in this chapter." Code Civ. Proc. §§ 381, 382.

It is not contended that either of the specified exceptions applied. When did this cause of action accrue? It scarcely admits of debate that plaintiff's intestate could have commenced an action upon the 1st day of October, 1905, to recover for the damages done to the property in question by reason of such change of grade, that her cause of action therefor was then complete, and that the measure of damages would have been precisely that applied in this case, namely, the difference between the market value of the premises in 1905 "before the change of grade on Meserole avenue" and the market value of the premises "in 1905, immediately after such change." Specific questions as to the value at each period were submitted to the jury, and it was upon their findings thereon that the general verdict in favor of plaintiff was based.

In the absence of statutory authority therefor, no action would lie if the grade had been lawfully changed. The wrong is deemed "damnum absque injuria." Radcliff v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357. But if such change were unlawful, the wrong is the same, and this wrong was completed on September 30, 1905. It was a single act, and not a succession of acts. If the change of grade had been lawfully made, but some statute had afforded the abutting property owner consequential damages therefor which otherwise he would not have had, the statute would have commenced to run when the physical change was complete. Matter of Grade Crossing Commissioners, 201 N. Y. 32, 94 N. E. 188; People ex rel. Brisbane v. Zoll, 97 N. Y. 203. The fact that the origin of plaintiff's recovery is an unlawful act instead of a lawful act, coupled with a statute allowing damages therefor, cannot alter the date when the wrong was complete.

In Cass v. Pennsylvania Co., 159 Pa. 273, 28 Atl. 161, defendant, pursuant to a decree in equity in a suit against the city of Allegheny, constructed bridges and viaducts across its road, upon which streets were carried over its tracks, and this involved a change of grade of the street. In an action for damages in which the statute of limitations was pleaded, the court said:

"The right of action, to whomsoever it accrued, was complete not later than the time when the work commenced had progressed to such an extent as to obstruct ingress and egress to and from the property to the streets; and the jury expressly found 'that the work was begun, so as to obstruct the streets, more than six years prior to the bringing of this suit.' The statute was therefore a flat bar."

In Powers v. St. Louis, Iron Mountain & Southern Railway Co., 158 Mo. 87, 57 S. W. 1090, defendant had constructed an embank-

ment and canal, the result of which was to cause a change in the bed of a river or creek, so that resulting injury to plaintiff's abutting property followed. In an action for damages for an alleged nuisance, the court held that

"the claim is clearly barred by limitation. The original construction of the canal was unworkmanlike, defective, and negligent, and necessarily produced the results complained of, but the time has long since passed when an action therefor could be maintained. The structure was permanent, the damage apparent and measurable, and could only be recovered in a single action. It is in no proper sense a continuing nuisance, where the damages are apportionable."

Respondent contends that the wrong here inflicted is similar to that caused by the construction of the elevated railroads through the streets of the city of New York, and, in analogy to the principle established in those cases, asserts that the embankment caused by changing the grade is a continuing nuisance. We think that there is a clear distinction. In the Elevated Railroad Cases, which were in equity, the property rights of the plaintiffs, to wit, easements of light, air, and access, to which the land in the street was servient in favor of the land of the abutting owners, were invaded, and it was for injury to these rights, which amounted to a taking of property without just compensation, that damages were allowed. Galway v. Metropolitan Elevated Ry. Co., 128 N. Y. 132, 28 N. E. 479, 13 L. R. A. 788. But in the case at bar the abutting property owner had no easement in the street which was taken away by such change of grade, nor were her property rights therein invaded. Matter of Grade Crossing Commissioners, supra; People ex rel. Brisbane v. Zoll, supra. In the Grade Crossing Commissioners Case, the court said:

"It may be conceded that in the elevated railroad cases the right of access has been treated as an easement coupled with that of light and air, for which a recovery may be had at common law. But the right of access or ingress and egress of abutting owners to and from a public street, standing alone, has always at common law been considered damnum absque injuria, and consequently no action would lie for the impairment of the right. * * * The approach to the railroad crossing was constructed by the grade crossing commissioners for the benefit of the traveling public through the highway in the exercise of governmental powers, and did not directly encroach upon the private property of the respondents, although the structure may have impaired, to some extent, their access to their premises, from which damages resulted; still it was not the taking of property within the meaning of the Constitution."

In the opinions in that case, attention is called to Matter of Torge v. Village of Salamanca, 176 N. Y. 324, 68 N. E. 626, and it was said that if there was anything in the language of the opinion in that case which might indicate that property had been taken where the grade of a street had been changed, such was not the actual decision of the court therein. As was said by the Chief Judge, it was intended to decide by that case "only that, so far as the rule of compensation was involved, the right granted by the statute was analogous to the case of the invasion of an easement."

We think that the judgment and order in this case must be reversed, and, inasmuch as the action cannot be maintained, judgment should be directed dismissing plaintiff's complaint, with costs of the action and of this appeal. All concur.